[No. 20360. Department One. April 15, 1927.]

## FIRST NATIONAL BANK OF EPHRATA, *Appellant,* v. D. B. KAHLE, *Respondent.*[1]

[1] MORTGAGES (259) — REDEMPTION — ACCOUNTING — RENTS AND PROFITS. Where a mortgagor, instead of redeeming from the foreclosure sale under Rem. Comp. Stat., § 595, demands an accounting for rents and profits during the period of redemption, and brings an action therefor, as provided in Id. § 600, he is entitled only to such relief as may be just and equitable; and the purchaser of orchard land should not be charged with the loss of profits through his method of marketing the crop which was generally adopted by orchardists, but only with the actual moneys received.

Cross-appeals from a judgment of the superior court for Grant county, Jeffers, J., entered July 7, 1926, upon findings in favor of the defendant, in an action to enforce redemption from a mortgage foreclosure and for an accounting, tried to the court. Affirmed.

*William M. Clapp,* for appellant.

*Daniel T. Cross, Charles A. Riddle,* and *Bronson, Robinson & Jones,* for respondent.

FRENCH, J.—Appellant, being the owner of certain second mortgages on land situated in Grant county, Washington, foreclosed its mortgages in 1922, took possession of the property, and thereafter handled it for two years. The respondent was the owner of a first mortgage which he foreclosed early in 1925. Some time prior to his receipt of a certificate of sale, and evidently with the consent of appellant, he took possession of the place.

The land in question is orchard land, the apple trees being about fourteen years old. Appellant thereafter desired to redeem and this action ensues.

[1]Reported in 255 Pac. 374.

Section 595, Rem. Comp. Stat. [P. C. § 7910], provides:

"The judgment debtor or his successor in interest, or any redemptioner, may redeem the property at any time within one year after the sale, on paying the amount of the bid, with interest thereon at the rate of eight per cent per annum to the time of redemption, together with the amount of any assessment or taxes which the purchaser or his successor in interest may have paid thereon after purchase, and like interest on such amount; and if the purchaser be also a creditor having a lien by judgment, decree or mortgage, prior to that of the redemptioner, other than the judgment under which such purchase was made, the amount of such lien with interest."

Section 600 provides:

"The purchaser, from the time of the sale until the redemption, and the redemptioner from the time of his redemption until another redemption, except as hereinafter provided, is entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. But when any rents or profits have been received by such person or persons thus entitled thereto, from the property thus sold, preceding the redemption thereof from him, the amount of such rents and profits, over and above the expenses paid for operating, caring for, protecting and insuring the property, shall be a credit upon the redemption money to be paid; and if the redemptioner or other person entitled to make such redemption, before the expiration of the time allowed for such redemption, files with the sheriff a demand in writing for a written and verified statement of the amounts of such rents and profits thus received, and expenses paid and incurred, the period for redemption is extended five (5) days after such sworn statement is given by such person thus receiving such rents and profits, or by his agent, to the person making such demand, or to the sheriff. It shall be the duty of the sheriff to serve a copy of such demand upon the person receiving such rents and

profits, his agent or his attorney, if such service can be made in the county where the property is situate. If such person shall, for a period of ten days after such demand has been given to the sheriff, fail or refuse to give such statement, such redemptioner or other person entitled to redeem from such sale making such demand, may bring an action within sixty days after making such demand, but not later, in any court of competent jurisdiction, to compel an accounting and disclosure of such rents, profits and expenses, and until fifteen days from and after the final determination of such action the right of redemption is extended to such redemptioner or other person making such demand who shall be entitled to redeem. If a sworn statement is given by the purchaser or other person receiving such rents and profits, and such redemptioner or other person entitled to redeem, who makes such demand, desires to contest the correctness of the same, he must first redeem in accordance with the sworn statement, and if he desires to bring an action for an accounting thereafter he may do so within thirty days after such redemption, but not later: Provided, that if such property be farming or agricultural property and be in possession of any purchaser or any redemptioner and is redeemed after the first day of April, and before the first day of December, and the purchaser or his tenant has performed any work in preparing such property for crops, or planted crops, he shall be entitled to reimbursement for such work and labor or the right to retain possession of such property until the first day of December following, and the redemptioner shall be entitled to collect the reasonable rental value thereof during such farming year, unless such reasonable rental shall have been collected by such purchaser and accounted for to the redemptioner.''

The appellant did not comply with the terms of either of the above statutes, but brought this action for the purpose of enforcing a redemption and demanding an accounting as to the profits.

[1]  In *Cogswell v. Brown,* 102 Wash. 625, 173 Pac. 623, this court said:

"It is provided, Rem. Code, § 601, that the court may restrain waste during the period of redemption. If a court of equity will restrain waste—and the cutting of timber except for fuel and the repair of fences is waste (§ 601)—during the period of redemption, it would seem to follow that it would entertain a suit of the owner for an accounting if the action is begun within the time for redemption. . . .

"We hold, therefore, that the plaintiff may maintain the action, but it does not follow that there is merit in their appeal. They have forsaken the law and appealed to equity; and appealing to equity, they must do equity. Their legal right was to redeem under the statute and within a certain time. They did not do so, but sought an accounting for waste. Their plea is one to which a court of equity will give ear, but to which a court of law will not listen. Such relief as they are entitled to is a matter of grace rather than of right, and as they demand equity, so must they take their recovery under the rules of equity. . . . They might have redeemed in money and in time and raised the present issue in a proper proceeding. They were content to become beseechers at the throne of grace and are entitled to the value of that which was taken, and no more."

The appellant in the present case might have redeemed the property by following the provisions of Rem. Comp. Stat., § 595. Instead, it demanded a verified statement of the rents and profits as provided in § 600, and then failed to redeem in accordance with such sworn statement and bring action for an accounting. These various courses of action were open to appellant and it chose to bring the present action, so that the entire question in this case is for the court to determine what is just, right and equitable between the parties.

It must be remembered that the land in question is a 36-acre orchard, depending entirely upon wells for its supply of water; that it had been practically abandoned by its original owner some time in 1922. The appellant had leased it on a crop-sharing basis to tenants who were unable to make the venture pay. The lands at the time they came into the possession of respondent were described by some of the witnesses as having the appearance of an abandoned, run-down farm, inadequately watered, improperly cared for in every particular. The respondent put the land in charge of an experienced orchardist, provided a tractor, farming implements of various kinds, cleaned out the well, installed a pump, and within a year's time changed the property from that of a worthless, diseased orchard to a first class producing orchard. The crop obtained was some three times larger than had theretofore been obtained. It was marketed by respondent through the Wenatchee District Cooperative Association, incorporated under the marketing act of 1921. The problem of how, when, and where the agriculturalist shall market his crops is one that has vexed every farmer and orchardist. There is little question that if, in the year 1925, respondent had placed his fruit on the market immediately upon harvesting it, he would have secured larger returns, but more than fifty per cent of the orchardists in this district chose to market their fruit through this particular association, and, while the venture proved unsuccessful, due largely we think to conditions of the apple market in England, it is but another illustration of the fact that hindsight is better than foresight.

It is true that the crop returns seem inadequate, but the appellant should not now be heard to complain because respondent joined with a large number of other

fruit growers of his community to market the fruit in the way that to them seemed proper. We hold, therefore, that the respondent was without fault in his method of marketing and can only be required to account for such moneys as he received from the association.

On the question of the expenditures made by respondent for the care and preservation of this property, it must be remembered, as was said at the outset of this opinion, that the farm was practically an abandoned farm, the trees badly infested with red spider and other orchard pests, that it required careful attention from experts, and that it needed a more adequate supply of water. The lower court was most painstaking in the trial of this case; had an opportunity to see and observe the witnesses; allowed many items of expense, and disallowed many items, and without setting forth in detail the disputed items and the method by which the lower court arrived at its conclusion, we feel that the result was right.

Both sides having appealed, no costs will be allowed either party.

Judgment affirmed.

MACKINTOSH, C. J., MAIN, MITCHELL, and FULLERTON, JJ., concur.